[Civ. No. 2869.   Third Appellate District.—April 25, 1925.]

MURPHY–CANTRELL CO., INC. (a Corporation), Respondent, v. JAMES MULCAHY, Appellant.

[1] LANDLORD AND TENANT—FIXTURES—ISSUES—FINDINGS.—In an action by an alleged assignee of a lease of premises containing a garage building to recover certain moneys alleged to have been paid to the lessor, where an issue was made by the lessor's cross-complaint and the answer thereto as to the ownership of fixtures or mechanical appliances installed in the building, or, in other words, as to whether the intention of the parties, at the time said mechanical appliances were installed, was or was not that they were to

become a permanent part of the freehold, and evidence *pro* and *con* was introduced on that issue, a clear, unequivocal, and direct finding upon such issue should have been made by the trial court.

[2] ID.—FINDINGS—CONSTRUCTION—INTENTION.—A declaration in the findings made by the trial court that "It is not true that the plaintiff wrongfully and unlawfully removed from said premises, or removed at all, any machinery, appliances, or anything else from said garage that it did not have a legal right to do," is rather a conclusion of law than a finding of fact; but, treating it as an attempt to find upon the question whether the parties intended the fixtures to become a permanent part of the building, it wholly fails to reach the mark.

[3] ID.—SPECIFICATIONS.—Findings should be so framed as to enable the vanquished party in the litigation to specify intelligibly the particulars in which such findings are not supported by the evidence, where such point is made.

(1) 38 Cyc., p. 1954, n. 16.   (2) 38 Cyc., p. 1973, n. 22, p. 1975, n. 28, p. 1980, n. 54.   (3) 38 Cyc., p. 1953, n. 12.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Reversed.

The facts are stated in the opinion of the court.

A. H. Carpenter for Appellant.

John R. Cronin and Clarence A. Grant for Respondent.

HART, J.—This controversy grows out of an agreement of lease between the defendant, as lessor, and George W. Breaw and C. P. Hamm, as lessees, whereby the former leased to the latter certain real property, situated in the city of Stockton, and described as the "south half of Lots One and Three, Block East of Center Street," of said city. The lease was executed by the parties on the seventh day of January, 1918, and provided that its force should be operative for a term of five years, from January 7, 1918, the date of the execution of the agreement. At the time of the execution of the agreement of lease there was no building on the land, but the lease provided that the lessor should erect one thereon according to plans and specifications approved by both the

2.   See 24 Cal. Jur. 927.
3.   See 24 Cal. Jur. 963.

lessor and lessees, the same to be occupied and used as a garage by the latter. The monthly rental to be paid was $160 for the first two years, $165 for the third year, $170 for the fourth, and $175 for the fifth year. Other provisions of the lease were: That the lessees should not assign the lease, nor let or underlet the premises, or allow any alterations therein, without the written consent of the lessor; that the lessees should (and they did) deposit with the lessor the sum of $350, "as security for the performance of the covenants contained in this lease, and in the event that all the covenants on the part of the parties of the second part contained in this lease are performed, then the said sum of $350 shall be applied in payment of the rent due for the last two months under this lease. The party of the first part shall pay to said parties of the second part four per cent per annum as interest on said sum of $350 at the end of the 58th month of this lease. If any rent shall be due or unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the party of the first part to re-enter upon said premises and remove all parties therefrom."

Said lease and all the rights of the lessees were, shortly after the execution of the agreement, transferred and assigned by them to the plaintiff.

The object of this action is to recover from the defendant the sum of $350, deposited by the original lessees with the defendant, as above explained, and to recover the further sum of $80, representing one-half of the rental paid defendant by plaintiff for the use and occupation of the premises for and during the month of May, 1919.

The complaint is in two counts. In the first it is alleged that the original lessees, at the time they transferred and assigned the lease to the plaintiff, also assigned, for and in consideration of the payment by the latter of the sum of $350 to them, the said sum of $350 deposited with the defendant upon the execution of the lease upon the conditions above indicated. It is alleged in said count that the assignment of the lease was with the express consent of the defendant. In the second count it is further alleged that, on the first day of May, 1919, while in possession of the premises under said lease, plaintiff paid to defendant, as rent for said month, the sum of $160, upon the following understand-

ing and agreement with defendant: That "if plaintiff did
not occupy said premises during the whole of said month,
he, the defendant, would refund to plaintiff a sum propor-
tionate to that part of said month that plaintiff did not
occupy said premises, and for which plaintiff had been
paid; that plaintiff, with the consent of defendant, termi-
nated said lease on the 15th day of May, 1919, and did
not occupy the premises after said 15th day of May, 1919;
that according to the aforesaid agreement there became due
plaintiff at said time a refund of eighty ($80.00) dollars,
upon said months rent; that plaintiff has demanded said
sum of eighty ($80.00) dollars from defendant, but defend-
ant still refuses to pay said sum to plaintiff."

The answer denies all the material averments of both counts
of the complaint, and alleges that the lease was assigned to
plaintiff by Breaw and Hamm without the written or any con-
sent of defendant; that said Breaw and Hamm, on or about
the fourteenth day of October, 1918, wrongfully and without
defendant's knowledge or consent removed from said prem-
ises, and "thereafter refused to pay defendant the rental
of said premises for the balance of their said term of lease,
ending on the 7th day of January, 1923, . . . , " and "for-
feited all moneys theretofore paid by them thereunder, in-
cluding said $350 mentioned in plaintiff's amended com-
plaint, and that defendant thereupon, as soon as he discovered
such breach on the part of said Breaw and Hamm, declared
said lease forfeited on the part of said lessees, together with
the said sum of $350, which had been deposited with him as
security for the full performance of said lease on their
part"; that plaintiff entered into the possession of said
premises without the knowledge or consent of defendant, and
any lease or right to such possession, and that, upon learning
that plaintiff had taken such possession, defendant demanded
that it remove from said premises forthwith, "or execute a
written lease to defendant for a period equal to the balance
of time which the said forfeited lease to Breaw and Hamm
called for; that plaintiff then and there evaded giving de-
fendant a direct answer to his demand, and replied that the
managers of said corporation would see their attorneys and
then give defendant a final answer in a short time; and that
after a delay of about eight months said managers notified
defendant that plaintiff would take no lease of said premises

from him and that defendant thereupon ordered plaintiff to remove from said premises at the expiration of the current month for which rent was paid.'' It was denied that, on the fifteenth day of May, 1919, ''or before the expiration of said lease or at any other or different time, the plaintiff, with consent of defendant, or otherwise, terminated said lease between him and the said Breaw and Hamm,'' but, as to this, the answer alleged that plaintiff was without right, power or authority to terminate said lease, ''as it was not a party thereto,'' etc.

By cross-complaint defendant alleged that he was damaged in the sum of $2,195 by reason of the alleged wrongful removal by plaintiff from the building of certain machinery, fixtures, and appliances, ''which formed part of said garage building, and which were rigidly attached thereto by bolts, nails and screws,'' and also by causing to be destroyed the enamel on the walls of the showroom and by soaking the floor thereof and the walls of the entire building with grease and oil.

The plaintiff answered the cross-complaint, denying all the allegations thereof, except those as to defendant's ownership of the premises referred to in the lease, the execution of the lease and the taking from the premises the machinery, all of which were admitted, alleging, however, that it was the owner of said machinery, fixtures, etc.

The court found in favor of the plaintiff on its first cause of action for the sum of $175, found against the plaintiff on its second cause of action, and against defendant on his cross-complaint.

Judgment passed accordingly, and the defendant appeals, contending: That certain material findings are without evidentiary support, that certain findings ''are contradictory to the admissions in the pleadings,'' and that there was a failure to find on a material issue.

[1] There is a failure to find upon the issue made by the cross-complaint and answer thereto as to the ownership of the fixtures or mechanical appliances installed in the building while it was in the course of erection, or, in other words, upon the question whether the intention of the parties, at the time the said mechanical appliances were installed, was or was not that they were to become a permanent part of the building, or, more accurately speaking, a part of the freehold. The machinery and other appliances referred to

constituted those articles of machinery and other appliances which are necessary to the prosecution of a garage and an auto repair business. This was the business for the carrying on of which the original lessees leased the building. The building was, in fact, erected for that special purpose. The fixtures consisted of a small motor, an air-pump, drills, shafting, apparatus for electric lights, and many other pieces of mechanical contrivances which, as before stated, are commonly and necessarily used in the carrying on of such a business as the building was designed for, as indicated above.

The defendant testified that, while the original lessees furnished, at their own expense, said machinery and appliances, he performed the work of installing them in the building and this he did as the building was in course of construction. He also testified that, at the very time the mechanical and other appliances were being installed, he stated to the original lessees that he desired that it should be understood between them that said fixtures should not be removed, but should remain as a permanent part of the building, and that to this proposition said lessees agreed by saying, "All right." He further testified that the appliances, or the greater part of them, were rigidly or firmly affixed to the building by means of bolts, nails, and screws. The plaintiff's manager, L. B. Murphy, testified that there was but one of the several different pieces of the mechanical appliances attached to the building, and that was the shafting. Thus there arose and exists a conflict in the testimony on the question whether the fixtures were or were not affixed to the building. The fact, however, that the fixtures might have been attached to the building by means of nails, or bolts, or screws, or wire, does not necessarily force the conclusion that it was the intention of the parties that they should become a part of the freehold, but is important because it may well be considered as some evidence of such intention, while the fact that they were not so attached might be considered as some evidence that such was not the intention. In either case, its weight would be determined by the light of other facts or circumstances tending to support either conclusion. Thus it is not only clear that the pleadings present an issue upon the question whether it was or was not the intention of the parties that the fixtures or appliances should become a permanent part

of the building and consequently a part of the freehold, but equally clear that evidence, *pro* and *con,* was introduced upon that issue. In other words, and briefly, both by the pleadings and the evidence an issue as to the ownership of said mechanical appliances was submitted to the court for decision, and a clear, unequivocal, and direct finding upon that issue should have been made.

[2] The only reference to be found in the findings to that issue is the following: "It is not true that the plaintiff wrongfully and unlawfully removed from said premises, or removed at all, any machinery, fixtures, appliances, or anything else from said garage that it did not have a legal right to do."

The foregoing is rather a conclusion of law than a finding of fact; but, treating it as an attempt to find upon the question whether the parties intended the fixtures to become a permanent part of the building, it wholly fails to reach the mark. No fact was found which supports the conclusion, as thus declared, that the plaintiff "removed any machinery, fixtures, appliances, or anything else from said garage that it did not have a legal right to remove." If, as the testimony of defendant tends to show, there was an agreement between him and the original lessees, that said fixtures were to become a part of and so not to be removed from the building at the expiration of the term of the lease by said lessees or anyone succeeding to their rights under the lease, then, obviously, the plaintiff had no right to remove the fixtures. As stated above, however, the whole question was one as to the intention of the parties and, as also stated, the defendant was entitled to a direct and specific finding upon the question of such intention. [3] This is true because findings should be so framed as to enable the vanquished party in the litigation to specify intelligently the particulars in which such findings are not supported by the evidence, where such point is made. The purported finding here, if a finding at all, does not measure up to this test.

The judgment is reversed.

Finch, P. J., and Plummer, J., concurred.